## TEXAS EMPLOYERS' INS. CO. v. JONES.
### No. 2962.

Court of Civil Appeals of Texas. El Paso.
March 22, 1934.

Rehearing Granted April 18, 1934.

Rehearing Denied May 3, 1934.

Wm. M. Cramer and Lawther, Cox & Cramer, all of Dallas, for appellant.

Hart Johnson, of Fort Stockton, and White & Yarborough, of Dallas, for appellee.

HIGGINS, Justice.

This is a suit by appellee, Jones, against the appellant, the carrier of insurance under

the Workmen's Compensation Law for the Dixie Oil Company, to set aside a ruling of the Industrial Accident Board denying plaintiff's claim for compensation.

The petition is in the usual form, but it is necessary to state some of the allegations thereof as follows:

On March 8, 1930, while working in the course of his employment for the Dixie Oil Company, plaintiff sustained accidental injuries by coming in contact with a guy wire heavily charged with electricity which severely burned him and threw him heavily upon the ground and injured him. He consulted a doctor and was advised he was not seriously injured and that he would be all right; he continued to work, not realizing the seriousness of his condition or that he had a compensable injury. He continued to work until May 8, 1932, when his injuries and disability developed resulting in total and permanent disability on May 8, 1932. Said injuries were not apparent and he did not realize or contemplate that his injuries would result in his total and permanent incapacity until May 8, 1932.

Plaintiff further alleged he filed with the Industrial Accident Board claim for compensation for his injuries and disability within six months after his disability developed and within six months after he was entitled to compensation therefor.

In the alternative it was alleged plaintiff had a meritorious case and had good cause for not filing his claim with the Board within six months; such good cause being the doctor's advice that his injuries were not serious, the delayed development of his injuries, etc.

The evidence shows the claim for compensation was filed with the Board on July 11, 1932.

The case was submitted upon special issues, and upon the findings made judgment was rendered in favor of the plaintiff awarding a lump-sum settlement in the sum of $6,844.71.

Briefly stated, the findings of the jury are as follows:

1. On March 8, 1930, Jones sustained accidental injuries.

2. Such injuries were sustained by Jones while working as an employee of Dixie Oil Company.

3. Such injuries were sustained in the course of his employment with said company.

4. Jones sustained total incapacity as a natural result of the injuries received on March 8, 1930.

5. Such injuries will be permanent.

6. The payment of compensation in weekly installments instead of a lump sum will result in a manifest hardship and injustice to plaintiff.

12a. The incapacity of Jones to work, resulting from the injuries sustained on March 8, 1930, commenced May 8, 1932.

12b. Jones first realized he had sustained incapacity to work on May 8, 1932.

13. The Dixie Oil Company received notice of the injuries within 30 days after March 8, 1930.

14. Jones made claim for compensation for his injuries to the defendant within six months after the disability resulting from such injuries began.

15. Jones made claim for compensation for his injuries sustained on March 8, 1930, to the Industrial Accident Board within six months after the disability resulting from said injuries began.

16. The Texas Employers' Insurance Association carried a policy of workmen's compensation insurance covering the employees of Dixie Oil Company on March 8, 1930.

17. The average weekly wage of Jones during the year preceding March 8, 1930, was $40.

A number of other issues were conditionally submitted and were not answered. The findings stated eliminated the necessity to answer same.

Among the issues conditionally submitted and not answered was No. 15a, which inquired whether good cause existed for the failure of Jones to file his claim for compensation with the Board within six months after the disability resulting from his injuries sustained on March 8, 1930, began. This issue was submitted conditionally upon a negative finding in answer to No. 15.

Briefly stated, Jones' testimony upon the controlling question in the case is to the following effect: When he came in contact with the wire charged with electricity, it knocked him down and knocked his teeth loose; he could not release the wire and it threw him ten or fifteen feet off the ground; he was drawn all over; it burned his hands; knocked the corns off his feet; burned him on the right foot and ankle; his toes looked like a man had mashed them with a hammer. The testimony shows that he had a hydrocele which developed immediately. The second

night after he was injured he went to see Dr. Bledsoe; he gave him some "dope" and recommended keeping hot towels on the hydrocele, which treatment he followed. He went to see another doctor, Dr. Morris, who recommended the same treatment as Dr. Bledsoe. He had some of his teeth taken out about a week after the shock; the shock affected his hearing and the sight of one eye, destroying the sight of such eye. He continued to work, but from the time he received his shock until he quit on May 8, 1932, he gradually went downhill, he gradually got worse, became nervous, was bothered with his stomach and groin, and suffered in his back and head. These feelings continued until he quit work; when he quit work on May 8, 1932, he was all in; he went along as long as he could until he got his thumb cut off; during the last six or eight weeks he did not see how he could go at all; he kept thinking he would get all right, that is the reason he kept working; from the time he got hurt until he quit working he gradually lost weight and strength; the hydrocelic condition existed every day since March 8, 1930, and has been painful since that time; it gradually increased, and on May 8, 1932, it had reached a very greatly enlarged condition; from the very start it was so enlarged as to be inconvenient and he knew this condition at the beginning. It was misery all the time; it started on March 8, 1930, and gave extreme pain on that date.

The first proposition presents the point that since the claim for compensation was not filed with the Industrial Accident Board within six months after the injury the defendant was entitled to an instructed verdict and the court erred in overruling its motion for such an instruction.

Section 4a of article 8307 (Rev. St.) provides: "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

It is not contended by appellee that any physical or mental incapacity existed which prevented an earlier filing of his claim, and it was incumbent upon him to show that "good cause" existed excusing the delay. It was necessary for him to show not merely good cause existing during the first six months after the injury, but good cause up to the time of filing. Holloway v. Texas Ind. Ins. Co. (Tex. Com. App.) 40 S.W.(2d) 75; Ocean, etc., Corp. v. Pruitt (Tex. Com. App.) 58 S.W.(2d) 41; New Amsterdam Cas. Co. v. Scott (Tex. Civ. App.) 54 S.W.(2d) 175 (writ refused); Durham v. Texas Ind. Ins. Co. (Tex. Civ. App.) 60 S.W.(2d) 255.

It may be conceded that plaintiff's allegations and testimony raised an issue as to good cause existing and thus excusing the delay in filing to May 8, 1932, when, according to his own theory, his complete incapacity to work commenced and he then realized it. There is nothing shown excusing the delay from May 8, 1932, to July 11, 1932, in filing the claim with the Industrial Accident Board. Under the authorities cited, this unexcused delay of two months and three days precludes recovery by appellee.

Appellee's theory, upon which he seeks to sustain the judgment, is based upon the meaning of the word "injury," and the language of section 4a that his "claim for compensation with respect to such injury shall have been made within six months after the occurrence of same"; and the fact that he continued to work until May 8, 1932, and therefore had no injury and no claim for compensation until that date.

In other words, his theory is that his "injury" did not occur until May 8, 1932, and he had six months from that date in which to file his claim with the Board.

It is quite true the word "accident" is not synonymous with the word "injury" as those words are used in the Workmen's Compensation Law. The injury is the result of the accident, but the injury may not develop immediately upon the happening of the accident which produced it. Texas, etc., Ass'n v. Wonderley (Tex. Civ. App.) 16 S.W.(2d) 386; Texas, etc., Ins. Ass'n v. Herron (Tex. Civ. App.) 29 S.W.(2d) 524.

In the cases last cited, as well as in Texas Ind. Ins. Co. v. Holloway (Tex. Civ. App.) 30 S.W.(2d) 921, "injury" is construed as meaning "incapacity" or "disability."

But the Compensation Law provides the word "injury" "shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as

naturally result therefrom." Article 8309, § 1, subd. 5, R. S.

It is quite plain from the plaintiff's testimony that the accident on March 11, 1930, resulted immediately in "injury" to him as that word. is defined in the Compensation Law.

The fact that he was not immediately incapacitated, that he continued to work and did not become incapacitated until May 8, 1932, and did not realize he had sustained incapacity until said date, does not alter the fact that on March 11, 1930, he sustained an "injury" as that word is defined by the Compensation Law, and out of which his claim for compensation arises. Such being the case, he was required to file his claim with the Board within six months after the occurrence of the same or show good cause excusing the delay. The delayed development of his injury and his failure to realize the extent of same until May 8, 1932, may present an issue of good cause existing to such date. Texas, etc., Ins. Ass'n v. Fricker (Tex. Civ. App.) 16 S.W.(2d) 390.

Such issue is one of fact for the determination of the jury. Consolidated Underwriters v. Seale (Tex. Civ. App.) 237 S. W. 642.

The appellee's theory, that in a case of delayed development of a total and permanent incapacity the claimant has six months from the date of such development in which to file his claim with the Board, is not the proper construction of section 4a. It is not in harmony with the rulings in the cases cited supra, which hold that in cases of delayed filing the claimant must show good cause up to the time of filing.

For the reason that the evidence in this case shows no good cause excusing the delay from May 8 to July 11, 1932, appellant's first proposition is sustained.

Justice WALTHALL concurs in the reversal and rendition herein, but reaches the conclusion that such is the proper disposition to be made of the case upon slightly different grounds from those stated above.

Reversed and rendered.

#### On Rehearing.

The only matter in the motion for rehearing to which we need refer is the complaint that the judgment should not be here rendered but the cause remanded for retrial.

As is pointed out in the motion, the case was tried upon the theory that a claim filed with the Board within six months after the incapacity to work begins is filed in time. It is apparent the trial court was of that opinion. Appellee urges that the defect in the evidence upon which our ruling is based can be supplied upon retrial. We cannot say that it is apparent from the present record that the evidence upon the issue of good cause excusing the delay in filing from May 8, 1932, to July 11, 1932, has been fully developed. It may be that such defect in the evidence may be cured upon retrial.

Accordingly, the judgment heretofore rendered is set aside, and it is now ordered that the judgment of the lower court be reversed and the cause remanded.